(91 South. 64)

No. 23857.

## LUIKART v. YAZOO & M. V. R. CO.

(Jan. 30, 1922. Rehearing Denied Feb. 27, 1922.)

*(Syllabus by Editorial Staff.)*

Railroads ⬦⇒482(3)—Evidence held to show negligent fire.

In an action against a railroad company for damages by fire, evidence *held* to show that defendant's employees, while burning grass on its right of way, set out the fire and negligently permitted it to spread to plaintiff's premises.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by Carl B. Luikart against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hunter C. Leake and Lemle, Moreno & Lemle, all of New Orleans (Charles N. Burch and H. D. Minor, both of Memphis, Tenn., of counsel), for appellant.

Taylor & Porter, of Baton Rouge, for appellee.

LAND, J. Plaintiff is the owner of a hay farm in the parish of East Baton Rouge, and brings this suit to recover of defendant company the sum of $2,097.50, as damages for negligently setting out a fire, while burning the grass on its right of way, and for destroying 8 tarpaulins, 70 tons of Lespedeza hay, 300 bushels of grass seed, and for damages done to seed on about 30 acres, and to hog fence around the premises.

The fire occurred on November 17, 1916, and plaintiff alleges that, while the employees of defendant company were engaged in burning the grass on its right of way, they failed to properly watch and guard the fire on said right of way, and negligently permitted it to blow to and spread over the premises of petitioner, thereby causing the damages complained of.

Defendant company specifically denies that it set out any fire along its right of way, and by its negligence and carelessness, or that of its agents, employees, and servants, allowed same to escape from its right of way to plaintiff's field; and it further declares and alleges that the fire on November 17, 1916, was not caused by it nor by its agents, employees, and servants, or by the

fault, carelessness, or negligence of any of them,. but that it originated otherwise, and that it is not liable for any loss occasioned by said fire.

Notwithstanding these denials, the employees of defendant company admitted on the trial of this case that on the date alleged, they were engaged in burning grass on the right of way of defendant company, and, although defendant company attempted to prove that the fire originated in the field, where there were some hunters, the testimony shows that not a single shot was fired in this field before the fire, that none of the hunters were seen smoking, or lighting matches for that purpose, and it further shows that there was no fire in the house of Mrs. Silas Jones near this right of way on the day in question. In the absence of all proof of the presence of fire on or near the premises, except upon the right of way upon which the grass was burning, the conclusion is inevitable that the fire set out by defendant company was the cause of the damage to plaintiff in this case, especially as it shows that the season was dry and that considerable wind was blowing from the west and southwest at the time of the fire, and necessarily in the direction of plaintiff's farm, which lies about a half a mile east of the right of way, and adjoins the tank farm of the Standard Oil Company on the south, with the Daugherty pasture lying between plaintiff's farm and the right of way of defendant company.

Mrs. Silas Jones, a witness for plaintiff, lived in the Daugherty pasture, a short distance from the right of way of defendant company, and east of it, and therefore, from the location of her house so near the right of way of defendant company, and at the scene of the fire, she was in a better position than any other witness to know the origin of this fire and the progress it made after being set out. She testifies that it was a warm, dry day, and that it was windy, and that the grass on the right of way and in her yard was short and dry. Continuing her testimony, she said:

"These two darkies had waste on a stick and were burning the grass on the railroad track. I went into the house, and was not in the house five seconds, when my boy came in and said the field was on fire. When I went out the whole field was on fire. I got my horse in, and it just burned everything. I think Mr. Luikart had about three stacks of hay; I know he had two, but I think he had three. I saw when the fire went to the hay.

"Q. Did the fire burn across your place?

"A. Yes, sir.

"Q. Your place was between the right of way and Mr. Luikart's place?

"A. Yes, sir.

"Q. Did it burn very quickly?

"A. Yes, sir; very fast.

"Q. You have seen a great many fires in your life—grass fires?

"A. No, sir; not many.

"Q. But you have seen some?

"A. Yes, sir.

"Q. Have you ever seen any sparks flying through the air—grass sparks?

"A. Yes, sir.

"Q. Sparks from grass fires?

"A. Yes, sir."

The mere fact, therefore, that there was a road between the railroad track and the Daugherty pasture, where Mrs. Jones lived, does not necessarily negative the idea that the sparks from the grass fire were not blown by the wind upon her premises, and, igniting the short, dry grass, spread rapidly to the Luikart farm. On the contrary, it is certain that such was the case, owing to the dryness of the grass and the blowing of the wind at the time, the proximity of the Daugherty pasture to the right of way, and to the fact that the fire on this right of way is shown to be the only fire present on that day near the premises, or on them.

Mrs. Jones is corroborated by a number of witnesses as to her testimony that the season was dry, and that considerable wind was prevailing at the time of the fire.

While the employees of defendant company testify that they exercised unusual care

in putting out the fire along the right of way as the grass was burnt, we find from the testimony of Mr. Edwin Whitney that this is not a fact. He has no interest in this case whatever, and testifies that on the day of the fire, between 2 and 3 o'clock in the afternoon, he was along the right of way, going to the New Orleans, Texas & Mexico Railroad Transfer to see about getting a position. This witness said:

"I noticed some men on my way up there, railroad employees, with sticks in their hands, and on the end of these sticks they had some waste which had been set on fire; and they were setting fire to the grass along side the right of way. It was North of the Wye.
"Q. North of the Wye?
"A. Yes, sir; at that time. Some of the fire had gotten inside of the fence in the old field. I was gone up there about three quarters of an hour, and when I came back, it was further up the track. They were still setting fire along side the railroad and trying to put out the fire that was inside of the fence."

It is true that the witness in his testimony does not refer to the Luikart field, but to an old sage field, and to an old fence along the right of way, northeast of the railroad track. This testimony is valuable, however, for the purpose of showing that fire from the right of way on that day, and just before the Luikart field was burned, had been allowed to escape from the right of way into another field in the same immediate neighborhood, which is clear proof that the employees of defendant company were not exercising the high degree of care to which they testify in the case in preventing the escape of the fire from the right of way into the adjoining premises along it.

This fire burnt 30 acres in the Luikart field, destroying tarpaulins, hay, and seed, and damaging the fence, and approached within a few hundred feet of the tank farm of the Standard Oil Company, endangering its property, which was saved by the wind veering from southwest to north. The Standard Oil Company's employees were marshaled to fight the fire, which was approaching rapidly, with a front extending over 400 feet.

The plaintiff was a pumper at the Standard Oil plant at the time the fire occurred, and, when he first learned of the fire, it had extended quite a way across the field, and was coming from the direction of the defendant company's right of way, and was burning east and a little to the north and northeast. When he reached his hay farm the fire had gotten into his field and two stacks of hay were in flames, and the ground that had been burnt over was to the west.

The witnesses in the case all agree in their testimony that the wind was blowing from the west and southwest at the time of the fire, which was necessarily driven to the east and northeast upon the premises of plaintiff. The testimony of the witnesses, and the map filed in this case show that this fire started at the property line of the Daugherty pasture, where Mrs. Jones lived, and spread east and northeast in the shape of a balloon, until it had burnt its way into the Luikart field, and had covered about 30 acres of that field. The burnt area itself is an eloquent witness as to the starting point of the fire and its extent. As the wind was blowing from west and southwest, the fire was naturally and necessarily driven to the east and northeast, and, if it had originated in the Daugherty pasture at some distance from the property line next to the right of way of defendant company, it could not have burnt the intervening area between the property line and the starting point of the fire in the Daugherty pasture, which was burnt, but would have been driven by the wind in the opposite direction. The area being burnt from the property line in the Daugherty field to the point in the Luikart field where the fire stopped explodes the theory of defendant company that the fire originated in the field, and was caused by trespassing hunters.

We do not find it necessary to review the testimony of each witness in this case, but, upon examining and considering the testimony as a whole we agree with the learned trial judge that its preponderance is clearly on the side of the plaintiff. We find also that plaintiff's loss has been established with legal certainty.

The judgment appealed from is therefore affirmed.